**FILED**
**CLERK**

3:08 pm, Sep 09, 2019

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
SALVATORE PICCOLO, SUSAN PICCOLO, and
BLUE RAGE d/b/a The Cop Shop,

                                        Plaintiffs,

                v.

GERALD SINGLETON,

                                        Defendant.
--------------------------------------------------------------X

**MEMORANDUM & ORDER**
18-CV-1324 (SJF) (GRB)

FEUERSTEIN, District Judge:

    Plaintiffs Salvatore Piccolo, Susan Piccolo, and Blue Rage d/b/a The Cop Shop ("Cop

Shop") (collectively "Plaintiffs") commenced this action against Defendant Gerald Singleton

("Defendant" or "Singleton")[1] seeking relief pursuant to 42 U.S.C. § 1983 and state law.

Defendant has moved to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure. *See* Motion, Docket Entry ("DE") [12]. Plaintiffs oppose the motion.

For the reasons set forth below, the motion is granted.

## I. BACKGROUND

### A. Factual Background

    The following facts are taken from the Amended Complaint ("AC"), DE [1-1], and are

assumed to be true for purposes of this motion. Salvatore Piccolo owns, and together with

Susan Piccolo, operates the plaintiff business, the Cop Shop. AC ¶4. The Cop Shop, which is

---

[1] Although the City of New York ("the City") is listed in the caption of the Amended Complaint as a
defendant, it was not named in the Amended Summons, it is not defined as a "party" in the body of the
pleading, there are no specific allegations pertaining to it, and Plaintiffs seek relief only against Singleton
in the Wherefore Clause. Moreover, Plaintiffs state in their opposition papers that Singleton is the lone
defendant. *See, e.g.,* Plaintiffs' Memorandum of Law in Opposition ("Pls' Opp.") at 4, DE [16] ("This
action is not against the City it is against Singleton").

located at 560 Broadway, Massapequa, New York, sells "various police, fire, and emergency medical service themed clothing, utility, and accessory items." *Id.* ¶¶5-6.

Defendant Singleton is employed as an Assistant Corporation Counsel for the City. AC ¶3. Plaintiffs allege that Singleton, "an agent of the City, has engaged in a course of conduct over a period of approximately six-plus years, consisting of trespass, harassment, physical assault, verbal intimidation, and tortious interference with business relations" of the Cop Shop." *Id.* ¶7. Plaintiffs make various factual allegations regarding alleged confrontations involving Singleton and Plaintiffs including:

- in November 2010 at the Fraternal Order of Police Jacob Javits Convention, Singleton visited the Cop Shop vendor table, claimed that a displayed item was counterfeit and/or bootlegged, and threatened Mr. Piccolo and his 80-year old father with arrest if the items were not removed. The items were removed resulting in lost revenue and customers. AC ¶19.

- in or around March to June 2013, Singleton entered the Cop Shop store, approached Plaintiffs' daughter, intimidated her verbally and threatened to have the whole family arrested. AC ¶15.

- in February 2014[2] at the Emergency Medical Services Show at the Nassau Coliseum, Singleton visited the Cop Shop booth, stepped towards Mrs. Piccolo "in an aggressive and intimidating manner, and bumped his chest into her," and yelled to customers that the items were counterfeit and/or bootleg. AC ¶12. Mrs. Piccolo ran to another booth manned by Mr. Piccolo with Singleton pursuing her. Mr. Piccolo contacted the security guards at the event who escorted Singleton out of the building "because of his violent and erratic behavior displayed toward the Plaintiffs . . . and attendees of the event." *Id.* ¶13.

- in October 2017, Singleton entered the Cop Shop store, refused Plaintiffs' demands that he leave, and threatened to have Mrs. Piccolo arrested. He was loud and aggressive to customers, stating that the merchandise was counterfeit and/or bootleg, and did not leave until after he was confronted by Plaintiffs' attorney. AC ¶16.

- during a second incident in October 2017, Singleton entered the store, "albeit pursuant to a Court Order permitting him to enter and take pictures of merchandise he alleged was counterfeit." AC ¶17. He rummaged through shelves, was aggressive to Mr. Piccolo,

---

[2] Although Plaintiffs state in a later allegation that this conduct took place in February 2015, *see* AC ¶33, other references to this incident consistently state that it occurred in February 2014. *See* Affidavit of Susan Piccolo at ¶3, DE [13-3];*see also* Trademark Action, 17-CV-3480, Ans. ¶139; Am. Ans. ¶106.

and told customers the merchandise was counterfeit resulting in lost sales.  The Nassau County Police were called "and by a show of force, instructed the Defendant to leave." *Id*.

Plaintiffs further claim that Singleton wrongfully interfered with their business associations:

- in or around September or December 2013, Singleton made "false allegations" that the Cop Shop was engaged in the illegal sale of counterfeit and/or bootleg items, resulting in non-party business United Insignia's cessation of business with the Cop Shop.  AC ¶20.

- in March 2014, another vendor, Heroes Pride, ceased doing business with the Cop Shop as a result of it having received a letter from Singleton instructing Heroes Pride not to sell any "New York City" items to the Cop Shop.  AC ¶21.

Plaintiffs contend that Singleton's statements that the Cop Shop was selling counterfeit or bootleg items were false and that Singleton knew that they were false. AC ¶22.  As a result of Singleton's actions, Plaintiffs have lost customers and vendors.

**B.  The Trademark Action**

On June 9, 2017, the City of New York commenced an action in this Court against Blue Rage d/b/a The Cop Shop, Salvatore Piccolo, and Susan Piccolo alleging six causes of action including, *inter alia,* trademark infringement.  *See City of New York v. Blue Rage,* 17-CV-3480 (the "Trademark Action").  Singleton has appeared as counsel for the City in the Trademark Action.  Motions for summary judgment are pending in that action.

Relevant to the current motion, in October 2017, the City in the Trademark Action sought permission to inspect the Cop Shop over the objection of opposing counsel who purportedly asserted that an inspection would constitute harassment.  Ltr. of 10/4/17, 17-CV-3480, DE [24].  Magistrate Judge Anne Y. Shields held a telephone conference with the parties on October 4, 2017 and issued the following electronic Order:  "Pursuant to rulings that were made during a telephone conference in Chambers, to the extent that [the City] wants to take any pictures at [the Cop Shop] for the purpose of litigation, such pictures must be taken upon notice to opposing

counsel.  Counsel have agreed that [the City] will be granted access to take pictures at [the Cop Shop] at 10:00 am on October 6, 2017."  Elec. Order of 10/4/17 (the "Inspection Order"), 17-CV-3480.

## C. Procedural History in the Current Action

Plaintiffs' first complaint, filed on or about November 20, 2017 in New York Supreme Court, Nassau County, named Singleton only in his individual capacity without mention of his position with the City.  That complaint stated four state law causes of action for: (1) assault and battery; (2) trespass; (3) tortious interference with business/contract; and (4) intentional infliction of emotional distress.  On or about February 8, 2018, Plaintiffs amended their complaint to add a fifth cause of action pursuant to 42 U.S.C. §1983, alleging that Singleton, acting as a City employee, has "unconstitutionally interfered with Plaintiffs' business without reason or justification in violation of the Fourth Amendment and Fourteenth Amendment."  AC ¶29.  Defendant timely removed the action.

Defendants now move to dismiss, arguing that: (1) the claims in this action are barred by the "prior pending action" doctrine; (2) Plaintiffs' failure to file a notice of claim requires dismissal of the state law claims; (3) all the state claims, except those arising from the October 2017 incidents, are time-barred; (4) Singleton is entitled to absolute, or alternatively qualified, immunity as to the October 2017 incidents; and (5) the amended complaint fails to state a plausible claim for relief as to their § 1983 claims.

## II. LEGAL STANDARDS

The standards for analyzing a motion to dismiss pursuant to Rule 12(b)(6) are well-established.  The court must accept the factual allegations in the complaints as true and draw all reasonable inferences in favor of the plaintiff.  *Lundy v. Catholic Health Sys. of Long Island Inc.*,

711 F.3d 106, 113 (2d Cir. 2013) (citations omitted). The court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

The determination of "whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S at 679. A pleading that does nothing more than recite bare legal conclusions, however, is insufficient to "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678-679; *see also Twombly,* 550 U.S. at 555 (holding that a "formulaic recitation of cause of action's elements will not do. . . Factual allegations must be enough to raise a right to relief above the speculative level" (citations omitted)). While Rule 8 does not require "detailed factual allegations," it does require more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

## III. DISCUSSION

### A. Prior Pending Action

Defendant argues that since Plaintiffs allege harm arising from his actions in protecting the City's trademarks, this case should be dismissed in favor of the Trademark Action pursuant to the prior pending action doctrine, which provides that "'[w]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience in

favor of the second action, or unless there are special circumstances which justify giving priority to the second.'" *Williams v. Bayview Loan Servicing, LLC,* No. 14CV7427, 2016 WL 8711209, at *2 (E.D.N.Y. Jan. 22, 2016) (quoting *Motion Picture Lab. Technicians Local 780 v. McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir. 1986) (internal quotation marks omitted)). Under this doctrine, the court may "stay or dismiss a suit that is duplicative of another federal court suit as part of its general power to administer its docket." *Ziemba v. Clark,* 167 F. App'x 831, 832 (2d Cir. 2006). Courts dismissing a case based on this doctrine "generally require 'that an identity of issues exists and the controlling issues in the dismissed action will be determined in the other lawsuit. In most instances the federal judges do not base their power to entertain this type of motion on any specific rule or statute, but ... speak only of their desire to promote judicial efficiency and to avoid conflicting opinions.'" *Williams,* 2016 WL 8711209, at *2 n.4 (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1360 (3d ed.) (footnotes omitted)).

In the Trademark Action, the City seeks to enforce its registered trademarks, thus raising claims that are not identical to issues asserted here and that have no direct bearing on the resolution of the current claims. In addition, at the time this case was removed to federal court, five months' worth of discovery had already been conducted in the Trademark Action, and within a week of the filing of the instant motion to dismiss, a briefing schedule for summary judgment motions was set in the Trademark Action. Given the relative procedural postures of the two cases, the interests of judicial efficiency would not be served by dismissing this case and

requiring Plaintiffs to litigate their claims in the Trademark Action. Accordingly, the motion to dismiss in light of the prior pending Trademark Action is denied.[3]

## B. Notice of Claim

Defendant argues that Plaintiffs' state law claims are foreclosed because they failed to file a notice of claim pertaining to any of those claims. Plaintiffs do not suggest that they filed a notice of claim, but instead contend that no such filing was necessary because the case is brought against Singleton only and is "based upon Singleton's actions which exceeded the scope of his authority as a City employee." Pls' Opp. at 5.

Prior to commencing an action against a municipal corporation "or any officer, appointee or employee thereof," New York law requires a plaintiff to file a notice of claim within ninety days after the claim arises. N.Y. GEN. MUN. LAW §§ 50-e and 50-i; *see also id.* §50-k(6) ("No action or proceeding . . . shall be prosecuted or maintained against the city or any or any agency or an employee unless notice of claim shall have been made and served upon the city"); *Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 24 (2d Cir. 2012) (noting that a "notice of claim is a condition precedent to the filing of an action against an employee of the City of New York."). "Notice of claim requirements are generally strictly construed, and failure to comply with the requirements typically results in dismissal due to failure to state a cause of action." *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, No. 05CIV.5106, 2006 WL 2713934, at *9 (E.D.N.Y. Sept. 22, 2006). However, "where a plaintiff brings an action against an employee of a public corporation, 'but not against the public corporation, service of the notice of claim upon

---

[3] Defendant in his reply papers argues for the first time that pursuant to Rule 13 of the Federal Rules of Civil Procedure, Plaintiffs' claims should have been brought as compulsory counterclaims in the Trademark Action. The Court declines to address this argument as "[t]he law in this Circuit is clear that arguments raised for the first time in reply briefs need not be considered." *Mayer v. Neurological Surgery,* P.C., No. 15-CV-0864, 2016 WL 347329, at *4 (E.D.N.Y. Jan. 28, 2016).

the public corporation shall be required only if the corporation has a statutory obligation to *indemnify* such person under this chapter or any other provision of law.'" *Jean-Laurent*, 461 F. App'x at 24 n.4 (quoting N.Y. GEN. MUN. LAW § 50–e(1)(b) (emphasis added)).  The city indemnifies its employee provided that the employee "was acting within the scope of his public employment and in the discharge of his duties. . . at the time the alleged damages were sustained."  N.Y. GEN. MUN. LAW § 50–k(3).

Plaintiffs in the Amended Complaint describe the relationship between Singleton and the City four times, alleging that Singleton: (1) was "employed as an Assistant Corporation Counsel" for the City,  AC ¶3; (2) is "an agent of the City of New York," *id.* ¶7; (3) "acting as an employee of the City of New York, Assistant Corporation Counsel, for a continuous period of over six (6) years has unconstitutionally interfered with Plaintiffs' business without reason or justification in violation of the Fourth Amendment and Fourteenth Amendment."  *id.* ¶29; and (4) "acting under color of state law" confronted Plaintiffs in front of customers and vendors. *Id.* ¶31.  Despite these allegations that Singleton acted as the City's agent, Plaintiffs in their opposition papers repeatedly assert that he was not acting within the scope of his employment, stating, for example, that any claim that Singleton acted "within the scope of his capacity as a City investigator is absurd."  Pls' Opp. at 3; *see also id.* at 2 ("Singleton was exceeding the scope of his authority when he conducted himself in the manner alleged in Plaintiffs' Amended Complaint"); *id.* at 3 ("when Singleton committed the tortious and other egregious acts he did so in excess of the scope of any purported authority granted to him as 'investigator' by the City"). *Id.*  Plaintiffs are relying upon the argument that Singleton was acting outside the scope of his employment to circumvent the notice of claim issue.

On motion to dismiss under Rule 12(b)(6), the Court must look to the allegations in the complaint, not to factual allegations made by a plaintiff in legal memoranda. *See, e.g., Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) ("[A] district court errs when it ... relies on factual allegations contained in legal briefs or memoranda ... in ruling on a 12(b)(6) motion to dismiss"); *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) ("Factual allegations contained in legal briefs or memoranda are ... treated as matters outside the pleading for purposes of Rule 12(b).... Thus, it would ... have been error for the court to consider the factual allegations contained in the plaintiffs' memorandum of law"). Plaintiffs may not "use their briefs to disavow the allegations in their complaint," *Burns v. Delaware Charter Guarantee & Tr. Co.*, 805 F. Supp. 2d 12, 19 (S.D.N.Y. 2011), nor can they "amend [their] complaint through statements made in motion papers." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (citations omitted). The allegations in the Amended Complaint clearly state that Singleton was acting as an agent of the City and as such, timely filing of a notice of claim prior to suit was required. In the absence of such a filing, Plaintiffs' state law claims must be dismissed.

## C. Timeliness of State Law Claims

Even if Plaintiffs' allegations could be read in such a way to suggest that Singleton was being sued in his individual capacity such that no notice of claim was required, their claims are largely barred by the applicable statutes of limitations. New York's one-year statute of limitations applies to claims for assault, battery, and intentional infliction of emotional distress. N.Y. C.P.L.R. § 215(3); *see, e.g., Abdallah v. City of New York,* No. 95 Civ. 9247, 2001 WL 262709, at *5 (S.D.N.Y. Mar. 16, 2001) (intentional infliction of emotional distress). Plaintiffs' assault and battery claim arises from the bumping incident that occurred at a trade show in

February 2014 and is clearly barred by operation of the statute of limitations as are any intentional infliction of emotional distress claims premised on actions occurring prior to November 20, 2016.

Claims for tortious interference with contracts or business are subject to a three-year statute of limitations.  N.Y. C.P.L.R. § 214; *see, e.g., Baiul v. William Morris Agency, LLC*, No. 13 CIV. 8683, 2014 WL 1804526, at *10 (S.D.N.Y. May 6, 2014), *aff'd*, 601 F. App'x 58 (2d Cir. 2015).  Such claims "accrue when the injury is sustained, not at the time the plaintiff discovers the injury."  *Techno-Comp, Inc. v. Arcabascio*, 130 F. Supp. 3d 734, 742 (E.D.N.Y. 2015) (citing *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94, 612 N.E.2d 289, 595 N.Y.S.2d 931 (1993)).  The incidents supporting Plaintiffs' claim of tortious interference with their business occurred, or were discovered, in November 2010, on or around September to December 2013, and on or about March 2014, all outside the statutory period.  New York claims for trespass are governed by the three-year statute of limitations for property damage claims.  N.Y. C.P.L.R. § 214(4); *see, e.g., Keita v. Bank of Am.,* No. 17-CV-880, 2018 WL 3998961, at *1 (E.D.N.Y. Aug. 21, 2018), *appeal dismissed*, No. 18-2936, 2019 WL 1496169 (2d Cir. Mar. 27, 2019). Any trespass claim arising from the incident that occurred on or around March to June 2013 is thus time-barred.

Plaintiffs do not dispute the applicability of the various statute of limitations, but rather argue that accrual of their claims was stayed by operation of the "continuing wrong" or "continuing violation" doctrines.  The case law presented by Plaintiffs does not support their argument.  One cited case involved a hostile work environment claim under Title VII in which the court noted that such claims by their very nature "are different in kind from discrete acts." *Caravantes v. 53rd St. Partners, LLC,* 2012 WL 96474, at *7 (S.D.N.Y. Jan. 12 2012) (quoting

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 S. Ct. 2061, 153 L. Ed. 2d 106

(2002)). The cases cited involving trespass and the "continuing wrong" doctrine state only that

a plaintiff may challenge an "*ongoing* violation . . . at any time *while the violation lasts* without

being barred by the statute of limitations." *Capruso v. Vill. of Kings Point,* 23 N.Y.3d 631, 641,

16 N.E.3d 527, 992 N.Y.S.2d 469 (2014) (emphasis added); *see also Bloomingdale's Inc. v. N.Y.

City Transit Auth.,* 52 A.D.3d 120, 124, 859 N.Y.S.2d 22 (1ˢᵗ Dep't 2008) (interference with

plaintiff's easement "constituted a continuing trespass and resulted in successive causes of

action"). Here, there is no continuous, ongoing violation but rather discrete, separate acts

occurring sporadically over a seven-year time period and involving different actors and

locations. Neither the continuing violation nor continuing wrong doctrines save Plaintiffs' time-

barred causes of action.

**D. Section 1983 Claim**

Claims brought in New York pursuant to § 1983 are subject to a three-year statute of

limitations. *See Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015). The claim accrues

"when the plaintiff has 'a complete and present cause of action, that is, when the plaintiff can file

suit and obtain relief.'" *Allen v. Antal*, 665 F. App'x 9, 12 (2d Cir. 2016) (summary order)

(quoting *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007) (internal

quotation marks and citations omitted)). Accordingly, any federal law claim arising prior to

November 2014 is time-barred, and Plaintiffs' timely claims are limited to any arising from the

October 2017 incidents.

To state a claim under § 1983, ""two essential elements must be present: (1) the conduct

complained of must have been committed by a person acting under color of state law; and (2) the

conduct complained of must have deprived a person of rights, privileges, or immunities secured

by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir.1994) (internal citations omitted). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Carlos v. Santos*, 123 F.3d 61, 65 (2d Cir. 1997) (quotation marks and citations omitted).

1. State Action

As discussed above, the Amended Complaint contains four conclusory allegations regarding Singleton's "agency" relationship with the City. Simply alleging that Singleton was acting as an agent of the City and under an apparent grant of authority by the City is insufficient. *Isaacs v. City of New York*, No. 10-CV-4177, 2012 WL 314870, at *2 (E.D.N.Y. Feb. 1, 2012) (finding statements that defendant was acting under color of law, within the scope of his duties, and under grant of authority given by the City "may be best characterized as a "threadbare recital[ ] of the elements of a cause of action which is insufficient to withstand a motion to dismiss" (alteration in original; citation omitted).

2. Constitutional Violation

Assuming *arguendo* that Singleton was a state actor during his two visits to the Cop Shop in October 2017, the Amended Complaint fails to plausibly state a claim for the lone remaining cause of action for violation of the Fourth Amendment.[4] Plaintiffs claim that their rights were violated on both occasions in October 2017 when Singleton first "entered the Plaintiffs' store and harassed them and [their] customers," Pls' Opp. at 10, and the second time when he "acted

---

[4] Plaintiffs' claim of purported violations of the Fourteenth Amendment is founded upon their allegations that Singleton wrongfully contacted two of Plaintiffs' vendors and "coerced" them into ceasing to do business with Plaintiffs. Even if these allegations were found to rise to the level of a constitutional violation, Plaintiffs were aware of these two incidents by March 2014 at the latest and thus the three-year statute of limitations had run when the complaint was filed in November 2017

aggressively, threatened the Plaintiffs' employees, and threatened the Plaintiffs and was forced to leave by uniformed police officers." *Id; see also id.* ¶16 (Singleton "would not leave the store for at least thirty minutes"); *id.* ¶17 (Singleton, contrary to the Inspection Order, "tried to run an audit, taking down and rummaging through numerous shelves"). They claim that as Singleton's acts exceeded the scope of the Inspection Order, his actions were tantamount to an illegal search.

"The basic purpose of [the Fourth] Amendment ... is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Court of City of San Francisco*, 387 U.S. 523, 528, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967). However, "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The Cop Shop is a retail store open to the public and Singleton entered while the store was open. There is no suggestion that he strayed beyond the public spaces during his visits. Plaintiffs have not provided any legal authority suggesting that such conduct constitutes an illegal search within the meaning of the Fourth Amendment. To the contrary, precedent in the criminal area finds no constitutional violation in similar circumstances. For example, entry into store by an undercover investigator "required no Fourth Amendment justification, since the store was a public place. It was open to the public, and the public transacted business in the store." *United States v. Bazzi*, No. 7-CR-212, 2010 WL 4451325, at *3 (W.D.N.Y. Apr. 14, 2010) (internal quotation marks and citations omitted), *adopted sub nom. United States v. Fowler*, No. 07-CR-212A, 2010 WL 4451241 (W.D.N.Y. Nov. 3, 2010); *see also United States v. Slimani*, No. S 88 CR. 232, 1989 WL 6624, at *2 (S.D.N.Y. Jan. 27, 1989) (noting that "[t]here is no case holding that agents who enter a store for reasons other than transacting the business for which the store is open are there by any lesser claim of right than any

member of the public who enters for the purpose of patronizing the store"). In the civil context, "[e]nforcement officers may, consistent with the Fourth Amendment and without requiring a warrant, search portions of commercial premises that are open to the public." *Players, Inc. v. City of New York*, 371 F. Supp. 2d 522, 537 (S.D.N.Y. 2005).

Plaintiffs mischaracterize the effect of the existence of the Inspection Order. None of the actions taken by Singleton in October 2017 rise to the level of a constitutional violation, and the mere fact that the actions were not expressly permitted by the Inspection Order does not somehow transform those acts into an illegal search under the Fourth Amendment. In other words, the Inspection Order did not by itself create any constitutional rights. Indeed, implicit in Magistrate Judge Shields' Inspection Order is the determination that no court authority was necessary for Defendant to enter the store during business hours and that the only proposed act requiring court intervention was the taking of pictures. To the extent Plaintiffs believed Singleton had violated the Inspection Order, they were free to move for appropriate sanctions in the Trademark Action for violation of a Court order.

As to Singleton's allegedly harassing conduct while in the Cop Shop, those allegations also do not state a viable federal claim. "It is well established that verbal abuse and profanity is not actionable conduct under 42 U.S.C. § 1983, as it does not violate any protected federal right." *Carrow v. City of New York*, No. 06 CIV.1436, 2010 WL 1009996, at *8 (S.D.N.Y. Mar. 17, 2010); *see also Covington v. Mountries,* No. 13-CV-343, 2014 WL 2095159, at *7 (S.D.N.Y. May 20, 2014) ("Verbal harassment, even if inappropriate or unprofessional, does not constitute a violation of any federally protected right and is not actionable under 42 U.S.C. § 1983"). Any § 1983 claim premised on Singleton's alleged harassment fails.

As the amended complaint fails to allege a constitutional violation, the motion to dismiss Plaintiffs' §1983 claim is granted.[5]

## E. Leave to Amend

Leave to amend a complaint "should be freely given when justice so requires," FED. R. CIV. P. 15(a)(2), but whether to grant or deny leave to amend lies in the sound discretion of the court. *See McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007). Where a plaintiff does not request leave to amend, the court may *sua sponte* decline to give leave to amend. *See Bright-Asante v. Wagner,* No. 15-CV-9110, 2017 WL 6948359, at *10 (S.D.N.Y. Dec. 1, 2017). As the Second Circuit has held, "[w]hile leave to amend under the Federal Rules of Civil Procedure is 'freely granted,' . . . no court can be said to have erred in failing to grant a request that was not made." *Cruz v. FXDirectDealer, LLC,* 720 F.3d 115, 126 (2d Cir. 2013) (quoting *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011)); *see also Malgieri v. Ehrenberg,* No. 12-CV-2517, 2012 WL 6647515, at *9 (S.D.N.Y. Dec. 21, 2012). ("a district court has no obligation to grant leave to amend *sua sponte")*

Plaintiffs, who have been represented by counsel throughout this litigation, have already amended their complaint once, and they have made no request, formal or informal, to further amend. They did not cross move for leave to amend, their opposition papers fail to make even a cursory stab at such a request, and they have never provided a proposed second amended complaint or presented any proposed factual enhancements. As Plaintiffs have not evidenced a desire to replead much less provided any indication that repleading would cure the deficiencies discussed above, dismissal of the matter is with prejudice.

---

[5] As the motion to dismiss the federal claim is granted, the Court need not address Singleton's additional argument that he is entitled to absolute immunity, or alternatively, qualified immunity.

**IV. CONCLUSION**

Defendants' motion to dismiss, DE [12], is granted.  The Clerk of the Court is directed to close the case.

**SO ORDERED**.

 /s/
Sandra J. Feuerstein
United States District Judge

Dated: Central Islip, New York
      September 9, 2019